IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DARRAN PERKINS,

      **Plaintiff,**

v.

JOHN BARWICK, LATOYA HUGHES,
KWAME RAOUL, LT. LITTLE,
SERGEANT AGNEW, MAJOR BAKER,
SGT BEBOUT, SERGEANT ROGERS,
SERGEANT MCKINSTRY, JOHN DOE
INTERNAL AFFAIRS OFFICERS, JANE
DOE NURSES, CHRISTINE BROWN,
T. HILL, M. LIVELY, and LT. TUTHILL,

      **Defendants.**

Case No. 26-cv-228-NJR

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge:**

Plaintiff Darran Perkins, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pontiac Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while he was housed at Pinckneyville Correctional Center. In the Complaint, Perkins alleges that he was subjected to unconstitutional conditions of confinement and other constitutional violations while at Pinckneyville.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which

1

relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

On February 13, 2025, Perkins wrote a grievance about the ongoing denial of medical attention and cruel and unusual punishment he faced due to the use of synthetic cannabinoids and accompanying smoke in his housing unit (Doc. 1, p. 6). Perkins alleged that Sergeant Agnew was aware that inmates in the housing unit were smoking synthetic cannabinoids sprayed on paper and that the smoke was filling the unit and endangering inmates like Perkins (*Id.*). Perkins begged Sergeant Agnew to call an emergency code because he could not breathe from all of the smoke, and Agnew denied his request stating that he didn't care (*Id.* at pp. 5-6). Perkins's grievance was deemed a non-emergency by Warden John Barwick (*Id.* at p. 6).

Perkins continued to write grievances against Sergeant Agnew (Doc. 1, p. 6). Agnew retaliated against Perkins by referring to him as a "rat" in front of a group of inmates, informing them that Perkins was going to "bring the heat down on all of you who smoke or sell" drugs in the unit (*Id.*). At one point Agnew told all of the individuals in his unit that Perkins was a snitch, and Perkins was going to get them all in trouble for smoking (*Id.* at p. 9). Perkins alleges these statements put him at risk of danger from other inmates (*Id.*). His fellow inmates were suspicious of him, and he received a reputation as an informant (*Id.*). On April 26, 2025, Agnew threatened Perkins in response to his numerous grievances, stating "we're going to fuck with you." (*Id.* at p. 7). At one point, Sergeant Agnew stated that the unit smelt like smoke and he hoped Perkins died (*Id.* at

2

p. 11). Perkins alleges that the retaliation and cruel and unusual punishment slowly escalated with every grievance he wrote, although Perkins fails to describe the additional acts of retaliation that he faced (*Id.* at p. 7). He merely refers to several grievances that he wrote documenting the retaliation (*Id.*).

Perkins alleges that he failed to receive any relief from his grievances (Doc. 1, p. 7). Instead, he decided to write letters to Warden Barwick and Director Latoya Hughes because they were responsible for supervising the employees at Pinckneyville (*Id.*). Perkins alleges that neither official remedied the situation nor sought to protect him (*Id.*). On May 14, 2025, he also wrote to Illinois Attorney General Kwame Raoul about the drug problem at Pinckneyville because it was his job to investigate and prosecute drug offenses (*Id.* at p. 8).

Perkins alleges that the presence of smoke in the unit was so strong, it hit him in the face the moment he entered the unit. The smoking led to fights among the inmates over drug debts or due to mental episodes caused by the drugs (Doc. 1, p. 9). Perkins suffered from medical issues due to the secondhand smoke (*Id.* at p. 10). His small cell and filthy ventilation exasperated the situation. On February 13, 2025, he suffered from nausea, dizziness, and shortness of breath (*Id.*). He developed sharp pains in his chest and felt like he was in a daze (*Id.*). He later learned he was suffering from an overdose due to exposure to the smoke from the drugs (*Id.*). He faced the conditions for months. In April 2025, he submitted requests to the medical unit for medical care and drug tests for his nausea and shortness of breath (*Id.*). He also started having panic attacks (*Id.*). When Perkins finally saw Dr. Gordon on May 5, he sympathized with Perkins's

3

symptoms and agreed that there were health risks from being exposed to secondhand smoke (*Id.* at p. 11). But the doctor was unable to provide him with any relief (*Id.*). On May 22, 2025, he submitted a grievance because he was disoriented, and his heart was beating rapidly (*Id.* at p. 15). He was on the verge of a panic attack due to his exposure to secondhand smoke (*Id.*).

After leaving the doctor's appointment, Perkins saw Warden Barwick and tried to speak with him about the conditions in his unit (Doc. 1, p. 11). He complained about the secondhand smoke and the overdoses that inmates were experiencing (*Id.*). He noted that Barwick had deemed his grievance a non-emergency (*Id.*). Barwick merely stated "I did huh" and kept walking. Perkins tried to complain about Sergeant Agnew and the lack of apathy from staff about the situation, but Barwick kept walking (*Id.* at p. 12). Perkins alleges that Major Baker witnessed the conversation and looked at Perkins with contempt, threatening Perkins with an investigation and referring to him by derogatory terms (*Id.*).

On May 13, 2025, Perkins fell from his top bunk due to nausea, dizziness, and possible seizure from secondhand smoke, causing a gash in his left pinky finger (Doc. 1, p. 12). Perkins alleges that the wound became infected, and he submitted numerous sick call request slips (*Id.*). When he finally saw a male nurse, the nurse told him it was not infected and to keep it dry (*Id.*). Perkins believes it was infected because the wound smelled and had "yellow boogers" inside (*Id.*). Perkins alleges the finger is now disfigured (*Id.*). He claims Christine Brown is also responsible for his injury because she supervises the nurses (*Id.* at p. 19).

On May 21, 2025, Major Baker, Sergeant Bebout, and a John Doe correctional officer retaliated against Perkins for the letters he wrote to the Attorney General and IDOC Director (Doc. 1, p. 13). The officers made him go through the metal detector four times even though the detector did not go off (*Id.*). They then checked his folders, searching for contraband. Afterwards, Bebout told him to get out of their sight and referred to him as a snitch (*Id.*). Previously, on May 13, Perkins had approached Baker and asked if he could smell the smoke and questioned whether he cared about the inmates overdosing (*Id.* at p. 14). Baker merely directed Perkins to get back to his cell (*Id.*). Baker, Bebout, C/O Derby, C/O Williamson and many other unknown officers harassed him on his way to the prison school. Every day in May and June they would identify inmates talking with Perkins and send them back to the housing unit. They would harass Perkins about his compliance with the rules and send him back to the housing unit (*Id.* at p. 15). For instance, they would instruct him that hats were not allowed in the building while he was in the motion of taking off his hat (*Id.*). Sergeant McKinstry once dared Perkins to say his statements louder when Perkins muttered that their actions at the metal detector were "bullshit." (*Id.*).

Perkins asked in his grievances for internal affairs to look at video footage that would prove his statements, but internal affairs officers never investigated and would respond that the camera footage was no longer available (Doc. 1, p. 14). Perkins argues that internal affairs officers violated his due process rights by failing to preserve camera footage (*Id.*).

5

On December 25, 2025, Perkins was the subject of a targeted shakedown of his cell (Doc. 1, p. 17). A pen stuffed with paper was found in his cell, and he received a disciplinary ticket for dangerous contraband and drug paraphernalia (*Id.*). Perkins admitted the pen was his but directed the adjustment committee to test the paper because it would have exonerated him (*Id.*). Perkins alleges that adjustment committee chair Lieutenant Little refused. Perkins notes that Little had a reputation for refusing to follow proper procedures in investigations and routinely finding inmates guilty of disciplinary charges (*Id.*). Internal Affairs Officer Heck interviewed Perkins (*Id.*). Perkins explained the harassment and retaliation he faced, but Heck just grinned through the interview (*Id.*). Perkins believes that Heck was working with the other officers because Heck later testified in another disciplinary ticket that Perkins had confessed to making a shank (*Id.*). Perkins alleges that Lieutenant Tuthill, Lieutenant Little, Internal Affairs Officer Heck, Grievance Officers A. Hill and M. Lively, John Doe Internal Affairs Officer, and Warden Barwick were all liable for deeming his grievances non-emergency and failing to uphold Perkins's right to remedy and justice (*Id.* at p. 18). He alleges that grievances are routinely denied and not properly investigated (*Id.*).

## Preliminary Dismissals

Perkins alleges that numerous high-ranking prison and government officials failed to remedy the issue with inmates smoking synthetic drugs at Pinckneyville. He alleges that he wrote letters to Attorney General Kwame Raoul and Director Latoya Hughes, but they failed to investigate his claims or, in the Attorney General's case, to prosecute crimes taking place at Pinckneyville. But there is no "free-floating obligation to put things to

6

rights" under Section 1983 and the law does not impart a general duty to rescue. *Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009). Although Perkins alleges that he wrote to both of these officials, these high-ranking officials did not create the conditions at Pinckneyville nor were they personally involved in enforcing the conditions at the prison. *Id*. at 595 (noting that high-ranking officials including the governor and superintendent of prisons are allowed to delegate management of the prison to those below them). Perkins also alleges that Latoya Hughes and John Barwick supervised all of the employees at the prison and Christine Brown supervised the nurse who treated Perkins's injured finger. But these official cannot be liable simply in their role as supervisors because there is no *respondeat superior* (or supervisory) liability under Section 1983. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001); *Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008).

Perkins also alleges that several officials denied his grievances or deemed them not an emergency. He alleges that Barwick specifically deemed his grievance not an emergency and notes that grievance officers T. Hill and M. Lively denied his grievances, but the simple denial or mishandling of a grievance does not state a claim. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Thus, any claim that grievance officials denied his grievances is **DISMISSED without prejudice**. To the extent Perkins has also alleged that Barwick was personally involved in subjecting him to unconstitutional conditions of confinement, those claims are discussed below.

Perkins identifies several individuals in his statement of claim that he failed to identify as defendants in the case caption. He alleges that Dr. Gordon failed to provide

him with treatment for his exposure to secondhand smoke, John Doe Nurse failed to adequately treat the injury to his pinky finger, and a John Doe correctional officer, C/O Derby, and C/O Williamson participated in the harassment and retaliation Perkins experienced after filing grievances. These individuals, however, are not identified in the case caption as defendants. In order to be a party in the case, a plaintiff must identify them in the case caption. *See* FED. R. CIV. P. 10(a); *Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005). Because Perkins failed to identify these individuals as defendants, any potential claim against them is **DISMISSED without prejudice**.

Perkins does identify Jane Doe Nurses and C/O Roberts as defendants in the case caption, but he fails to include any allegations against them in his statement of claim. Thus, any claim against these individuals is also **DISMISSED without prejudice**.

Finally, Perkins alleges that Sergeant McKinstry dared him to speak louder when Perkins stated that their actions at the metal detector were "bullshit." Perkins fails to allege that Sergeant McKinstry's statements amounted to a constitutional violation. Verbal harassment alone does not state an Eighth Amendment claim. *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). Nor does Perkins allege that Sergeant McKinstry's statements were accompanied by any physical acts that would rise to the level of a constitutional violation. It also does not appear that Sergeant McKinstry's statements amount to retaliation as Perkins fails to allege that McKinstry was aware of Perkins's grievances and acted in response to those grievances. *Hawkins v. Mitchell,* 756 F.3d 983, 996 (7th Cir. 2014) (In order to state a retaliation claim, a plaintiff must allege that he engaged in protected activity, "suffered a deprivation likely to deter such activity," and

the "First Amendment activity was at least a motivating factor in the decision to impose the deprivation."). Thus, the claim against McKinstry is also **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Complaint, the Court designates the following counts:

> **Count 1:** **Eighth Amendment conditions of confinement claim against Sergeant Agnew, Warden John Barwick, and Major Baker for allowing inmates to smoke in Perkins's unit and subjecting him to secondhand smoke and synthetic drugs.**
>
> **Count 2:** **First Amendment retaliation claim against Sergeant Agnew for threatening Perkins and labeling him a snitch in front of other inmates.**
>
> **Count 3:** **First Amendment retaliation claim against Baker and Sergeant Bebout for harassing Perkins in response to his numerous grievances.**
>
> **Count 4:** **Eighth Amendment deliberate indifference to medical needs claim against Sergeant Agnew for failing to provide medical care for his secondhand smoke and synthetic drug exposure.**
>
> **Count 5:** **Fourteenth Amendment due process claim against Internal Affairs Officer Heck, Lt. Little, Lt. Tuthill, and John Doe Internal Affairs Officer for finding Perkins guilty on two disciplinary tickets.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered**

**dismissed without prejudice as inadequately pled under the** *Twombly* **pleading standard.**[1]

*Count 1*

At this stage, Perkins alleges a viable conditions of confinement claim against Sergeant Agnew, John Barwick, and Major Baker. He alleges that he informed each official about the conditions he experienced in the housing unit, including the use of synthetic drugs. Despite each official's knowledge of the heavy secondhand smoke in the unit, they each refused to remedy the conditions or stop the spread of drugs. *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008). Thus, Count 1 shall proceed against Agnew, Barwick, and Baker.

*Count 2*

Perkins also states a viable retaliation claim against Sergeant Agnew in Count 2. Perkins alleges that in response to his numerous grievances, Sergeant Agnew threatened him on several occasions, stated that he hoped he died, labeled him a snitch, and informed inmates in his unit that he was a snitch, placing his life in danger. The allegations suggest much more than mere verbal threats. *See Dobbey v. Ill. Dep't of Corr.*, 574 F.3d 443, 445 (7th Cir. 2009); *Irving v. Dormire*, 519 F.3d 442, 445, 449-50 (8th Cir. 2008) (repeated death threats, labeling plaintiff a snitch, and offering to pay inmates to attack plaintiff); *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (verbal sexual comments and

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

suggestive actions to imply the plaintiff was gay put the plaintiff at risk from other inmates); *Hughes v. Farris*, 809 F.3d 330, 334 (7th Cir. 2015). Thus, Count 2 shall proceed against Sergeant Agnew.[2]

### Count 3

Perkins also states a claim against Bebout and Baker for their campaign of harassment against Perkins. They threatened him, punished inmates who spoke to him, and made him return to his cell on numerous occasions, prohibiting him from attending prison school. Count 3 shall proceed.

### Count 4

Perkins also adequately alleges a deliberate indifference to medical needs claim against Sergeant Agnew. He alleges that he begged Sergeant Agnew to call an emergency code because Perkins could not breathe but Agnew refused. Thus, Count 4 shall proceed against Agnew.

### Count 5

Perkins fails, however, to state a claim for violation of his due process rights regarding his disciplinary tickets. In order to state a due process claim, an inmate must allege "(1) a constitutionally protected liberty interest and (2) deficient procedures

---

[2] Perkins also alleges that Sergeant Agnew's actions placed him at risk of harm from other inmates and constituted cruel and unusual punishment. Although the same allegations also may state an Eighth Amendment claim, the claim is redundant to his First Amendment claim. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (dismissing Fourteenth and Eighth Amendment claims based on the same allegations as the First Amendment claim because the claim "gains nothing by attracting additional constitutional labels").

attendant to the deprivation of that interest." *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024). An inmate's liberty interests are protected by the Due Process Clause only insofar as a deprivation of the interest at issue would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In situations where an inmate complains about discipline in which he received segregation constituting an atypical and significant hardship (but not the loss of good-time credit), the disciplinary proceedings are subject to an informal due process inquiry. *Ealy*, 109 F.4th at 965 (citing *Adams v. Reagle*, 91 F.4th 880, 895 (7th Cir. 2024)). Informal due process requires only that an inmate is provided (1) notice of the reasons for his placement in segregation, and (2) an opportunity to present his views in either a written statement or hearing. *Ealy*, 109 F.4th at 966.

In this case, Perkins fails to allege that the discipline he received amounted to an atypical and significant hardship. He merely alleges that he was placed in segregation but fails to indicate the length of his placement and the conditions he faced there. Further, Perkins alleges that he was denied due process because officials failed to review video tape evidence, test the paper for drugs, or further investigate his claims. But there are no allegations to suggest that he was denied the requirements for informal due process, including notice of the disciplinary reports and an opportunity to present his views. As such, the due process claim in Count 5 is **DISMISSED without prejudice**.

## Disposition

For the reasons stated above, Count 1 shall proceed against Sergeant Agnew, Major Baker, and Warden John Barwick. Counts 2 and 4 shall proceed against Sergeant

12

Agnew. And Count 3 shall proceed against Baker and Bebout. All other claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Sergeant Agnew, Major Baker, Sergeant Bebout, and Warden John Barwick: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Perkins. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Perkins, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

13

If judgment is rendered against Perkins, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Perkins is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  May 15, 2026**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**